IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BARBARA DURANT, *individually, and on behalf of all others similarly situated,* | Case No.: 23-cv-2826 |
| *Plaintiff,* | CLASS-ACTION COMPLAINT |
| v. | Jury trial demanded |
| SOLIDQUOTE, LLC and THE LEAD COMPANY, INC., | Related case: 1:23-cv-00318-GPG-NRN *Klassen v. SolidQuote, et al* |
| *Defendants.* | |

## CLASS-ACTION COMPLAINT

Plaintiff, Barbara Durant ("Plaintiff", "Ms. Durant" or "Durant"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, submits her Class-Action Complaint against Defendant SolidQuote LLC ("SolidQuote") and The Lead Company Inc. ("TLC") (collectively "Defendants"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. Plaintiff Barbara Durant brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants.

2. Defendants violated Plaintiff' and the putative class-members' rights by placing solicitation calls to Plaintiff and the putative class members' residential lines with the use of an artificial or prerecorded voice message. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations.

//

## BACKGROUND ON THE TCPA

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

4. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment.[1]

6. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

7. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list (last accessed on May 25, 2023) "Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases."

2

CLASS-ACTION COMPLAINT

8. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

9. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(9).

- Prohibit unsolicited advertising faxes.

10. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

12. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87

(2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

14. This Court has personal jurisdiction over Defendant SolidQuote, which is headquartered and systematically conducts business in the State of Colorado.

15. While TLC is a Michigan-based company, it systemically and continuously conducts business in the Colorado.

16. Furthermore, TLC purposefully availed itself to this State by contracting with SolidQuote in order to generate revenue for the Colorado based company.

17. Furthermore, upon information and belief, Solidquote paid TLC for "leads", and some or all of those payments issued from SolidQuote's Colorado bank account.

18. Furthermore, TLC knowingly and willfully transferred calls to SolidQuote, which is a Colorado business.

19. TLC did so in furtherance of the call campaign it underwent on SolidQuote's behalf.

20. Through TLC's systemic business presence, and the specific actions related to its campaign on SolidQuote's behalf, it was reasonable foreseeable TLC would be hailed into court in Colorado.

21. This Court has personal jurisdiction over SolidQuote and TLC. Furthermore, venue is proper pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2).

**PARTIES**

22. Plaintiff, Barbara Durant is a natural person who resided in Kansas City, State of Missouri at all times relevant hereto.

CLASS-ACTION COMPLAINT

23. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

24. Defendant SolidQuote is an automobile insurance lead generator with headquarters located at 13918 E. Mississippi Ave #61234, Aurora, Colorado 80012.

25. SolidQuote is a "person" as that term is defined by 47 U.S.C. §153(39).

26. SolidQuote acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

27. Defendant TLC is a telemarketing lead generator that sells insurance leads to brokers and insurers. TLC is headquartered at 6757 Cascade Rd SE 205, Grand Rapids, Michigan 49546.

28. TLC is a "person" as that term is defined by 47 U.S.C. §153(39).

29. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, and representatives.

## FACTUAL ALLEGATIONS

### *The Relationship Between SolidQuote and TLC*

30. SolidQuote is an insurance "matching service", which sells insurance policies to consumers. SolidQuote enters into contracts with third-party vendors for lead generation.

31. Certain lead generators, including TLC, use telemarketing to find potential customers or "leads."

32. SolidQuote entered into a lead generation contract with TLC.

33. The contract between TLC and SolidQuote provides SolidQuote with the ability to exercise substantial control over TLC's marketing activities.

34. SolidQuote paid TLC per lead.

35. SolidQuote provided scripts, materials and training to TLC in connection with TLC's lead generation/telemarketing campaign on SolidQuote's behalf.

36. The Agreement affords SolidQuote audit rights as to The Lead relating to its marketing activities, call transfers and telemarketing calls.

**Facts Specific to Durant**

37. At all times relevant hereto, Plaintiff, owned a cell phone number (816)-xxx-7105 ("Cell Phone").

38. Plaintiff used that cell phone for primarily residential purposes, such as speaking with family.

39. Durant's number was registered to her as an individual, and not to a business.

40. Durant's registered her number on the Federal Do-Not-Call Registry in or around October 28, of 2003, in order to obtain solitude from unwanted telemarketing calls.

41. At all times relevant, Durant was the sole user and/or subscriber of the Cell Phone and was financially responsible for phone service to the Cell Phone.

42. In SolidQuote's overzealous attempt to market its services (through its agent, TLC), SolidQuote willfully or knowingly made (and continues to make) unsolicited telemarketing phone calls utilizing an artificial and/or pre-recorded message without the prior express written consent of the call recipients, in addition to placing telemarketing calls to people registered on the National Do Not Call Registry.

43. Through this conduct, SolidQuote has invaded the privacy of Ms. Durant and members of the Class.

44. At no time prior to SolidQuote and TLC's first initiating its call to Ms. Durant did Ms. Durant provide her Cell Phone number to SolidQuote or TLC, through any medium.

45. At no time did Ms. Durant ever enter in a business relationship with SolidQuote before the call campaign.

46. At no point did Ms. Durant provide SolidQuote or TLC with her express written consent to be called for telemarketing purposes.

47. Nonetheless, on or before October 28, 2022, Defendant started placing telemarketing phone calls to Plaintiff soliciting car insurance services.

48. At approximately 9:14 am on October 28, 2022, Ms. Durant received a call to her Cell Phone from 913-382-7894. After Durant answered, she was greeted with voice technology known as "soundboard" or "avatar", which uses AI and pre-recorded clips programed to respond to certain prompts. The calling party's voice purported to belong to a woman named "Crystal".

49. It was evident to Ms. Durant that the voice she heard was pre-recorded and/or computerized because, *inter alia*: (a) the generic content of the voice; and (b) the tone, cadence and inflection of the voice, which sounded to the Ms. Durant's ears like a pre-recorded and/or computerized voice, rather than a human voice from a live individual on the line.

50. Like most people, Durant can differentiate the characteristics and sounds of a pre-recorded voice in contrast to a live human voice.

51. The pre-recorded "representative" asked Durant multiple questions about her vehicle and her insurance, in furtherance of its efforts to solicit her business.

52. Ms. Durant stayed on the line to learn the identity of the company robocalling her without consent.

53. The computerized voice told Durant to stay on the line to speak with a live agent. Ms. Durant stayed on the line to learn the identity of the company robocalling her without consent.

54. Shortly thereafter, a live agent who identified herself as "Gaetane", appeared on the telephone line. When Durant asked, Gaetane stated she worked for SolidQuote.

55. On October 28, 2022, at 4:23 PM Durant received a second call from number 816-521-6115 when she answered the phone, the live agent identified that he is calling on behalf of SolidQuote..

56. SolidQuote has confirmed it spoke with Durant. SolidQuote further disclosed that TLC was the telemarketing lead generator responsible for the calls to Durant.[3]

57. If TLC directly placed the calls to Durant, TLC would be directly liable and SolidQuote would be vicariously liable.

58. If TLC hired a sub-agent to place the calls to Durant, then TLC and SolidQuote would both be vicariously liable,

59. As a result of the unlawful robocall, Ms. Durant experienced frustration, annoyance, irritation and a sense that her privacy has been invaded.

//

**Direct and Vicarious Liability**

---

[3] Durant's counsel has received unclear information as to whether TLC directly placed the calls, or another telemarketer placed the calls pursuant to a contractual relationship with TLC. In the event Durant learns with certainty another party was involved in placing the call(s), Plaintiff reserves the right to amend.

60. On May 9, 2013, the FCC issued a Declaratory Ruling that held that "sellers" such as SolidQuote may not avoid liability by outsourcing telemarketing to third-parties, such as TLC:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

61. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*., at 6587 n. 107.

62. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

63. Upon information and belief, Defendant SolidQuote hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by TLC

64. TLC had actual and/or apparent authority to act on behalf of SolidQuote.

10

CLASS-ACTION COMPLAINT

65. SolidQuote had the ability to direct and control TLC's business activities, as it relates to marketing SolidQuote policies and placing calls that were to be transferred to SolidQuote.

66. Furthermore, SolidQuote accepted a transferred call and/or purchased a lead from and affirmatively told Durant the caller was SolidQuote. Accordingly, even if TLC did not have actual authority to place telemarketing calls to Durant, SolidQuote manifested assent to those actions to Durant by speaking with her in a call that arose out of TLC's campaign on SolidQuote's behalf.

67. Where SolidQuote had the ability to require evidence of express written consent before accepting a telemarketing lead, it instead exercised willful blindness. SolidQuote ratified its agents' violations of the TCPA by accepting leads from TLC it had reason to know did not contain express written consent.

68. SolidQuote acted as a principal to TLC, which acted as SolidQuote's agent.

69. SolidQuote is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from TLC's TCPA violations.

70. For the counts identified below, for any unlawful call made by TLC on SolidQuote's behalf, SolidQuote is vicariously liable and TLC is directly liable.

71. To the extent any sub-agent, placed unlawful calls on behalf of TLC, in connection with the campaign on SolidQuote's behalf, then TLC and SolidQuote would both be vicariously liable for such unlawful communications.

## CLASS ALLEGATIONS

72. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This

action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

 73. Plaintiff seeks to represent the following class:

> **SolidQuote Pre-Recorded Voice Class:** All persons within the United States: (1) whom received any telephone call/s on behalf of SolidQuote; (2) to said person's cellular telephone or residential phone; (3) which utilized an artificial or prerecorded voice; (4) from four years prior to the filing of this Complaint until the date of certification
>
> **TLC-SolidQuote Pre-Recorded Voice Sub-Class:** All persons within the United States: (1) whom received any telephone call/s from TLC (either directly or by its agent(s)); (2) on behalf of SolidQuote; (3) to said person's cellular telephone or residential phone; (4) which utilized an artificial or prerecorded voice; (5) from four years prior to the filing of this Complaint until the date of certification; and
>
> **SolidQuote DNC Class:** All persons within the United States who from four years prior to the date of the filing of this lawsuit to the date of class certification: (1) received more than one telephone call or text message from SolidQuote or someone acting on its behalf (2) during a 12-month period; (3) where the calls were made in connection with a campaign to solicit products or services; and (4) whose number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received.
>
> **SolidQuote-TLC DNC Sub- Class:** All persons within the United States who from four years prior to the date of the filing of this lawsuit to the date of class certification: (1) received more than one telephone call or text message from TLC (or on TLC's behalf); (2) on behalf of SolidQuote, (3) during a 12-month period; (4) where the calls were made in connection with a campaign to solicit products or services; and (5) whose number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received.

74. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

75. The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

76. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

77. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

78. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

79. Class Members are so numerous and that their individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

80. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

   a. Whether an agency relationship between TLC and SolidQuote can be established;

   b. Whether SolidQuote had the ability to direct and control TLC's business activities;

   c. Whether TLC had actual authority to place the calls using a pre-

       recorded message to Durant and the putative class;

   d. Whether TLC had implied actual authority to place the calls using a pre-recorded message to Durant and the putative class;

   e. Whether TLC had apparent authority to act on behalf of SolidQuote;

   f. Whether SolidQuote ratified TLC's unlawful telemarketing;

   g. Whether Defendants' conduct violates 47 U.S.C. § 227(b) and the corresponding rules and regulations implementing the TCPA;

   h. Whether Defendants' conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and

   i. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

81. Plaintiff's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

82. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this class action lawsuit.

83. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual

issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

84. SolidQuote is headquartered in this District. TLC generated leads for SolidQuote and transferred calls to SolidQuote, which is headquartered in this District. This District is therefore an appropriate forum in which to adjudicate this dispute. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

**COUNT I**
**Violations of the Telephone Consumer Protection Act**
**47 US.C. § 227(b)**
*Pre-Recorded Voice Claim*

85. Ms. Durant re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

86. Durant brings this Count individually and on behalf of all others similarly situated.

87. At all relevant times, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

88. Defendants placed unsolicited and unauthorized phone calls using an artificial or pre-recorded voice to the cellular or residential telephones of Plaintiff and the Class members for the purpose of marketing products and/or services to Ms. Durant and the Class.

89. Defendants knew or should have known they did not have prior express written consent to make these calls and knew or should have known that it was using an artificial or prerecorded voice in violation of the TCPA.

90. Defendants, willfully, and/or knowingly allowed telemarketing calls to be placed to Ms. Durant and Class members utilizing an artificial or pre-recorded voice. For instance, SolidQuote and TLC both could have determined from a review of its own business records that it did not have the required prior express written consent to contact Ms. Durant and/or Class members yet disregarded such information and placed illegal and unwanted solicitation calls to Ms. Durant and the Class.

91. The foregoing acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

92. Defendants' conduct invaded Plaintiff's privacy.

93. Defendants' conduct was negligent, willful or knowing.

94. As a result of Defendants' violations, Plaintiff and each of the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and an award of $1,500.00 in statutory damages for each and every willing or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

95. Ms. Durant and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

### COUNT II
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)(5)
### *Do-Not-Call Claim*

96. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

97. Durant brings this Count individually and on behalf of all others similarly situated.

98. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

99. Defendant called Plaintiff for solicitation purposes despite the fact his number had been on the Do Not Call Registry since October of 2003.

100. Defendant called Plaintiff and the putative class members on multiple occasions during a single calendar year despite Plaintiff's registration on the Do Not Call list.

101. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff and the putative class members.

102. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, and absent bona fide error or good faith mistake.

103. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

### Prayer for Judgment

WHEREFORE, Plaintiff BARBARA DURANT individually, and or on behalf of all other similarly situated, requests the Court grant the following relief:

   a. Enter an order against Defendants SolidQuote and TLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Ms. Durant as the class representative;

   b. Enter an order appointing Kimmel & Silverman, P.C and Kazerouni Law Group, APC as class counsel;

   c. Enter judgment in favor of Ms. Durant and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(b) and up to $1,500 per violation of each subsection if Defendants willfully violated the TCPA;

   d. Enter judgment in favor of Ms. Durant and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if Defendants willfully violated the TCPA;

   e. Enter injunctive relief against both Defendants as permitted under the TCPA;

   f. Award Ms. Durant and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration; and

   g. Award Ms. Durant and the class such further and other relief the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, BARBARA DURANT demands a jury trial in this case.

Respectfully submitted,

Dated: October 26, 2023

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*/s/ Ryan L. McBride*
Ryan L. McBride, Esq.
ryan@kazlg.com
David J. McGlothlin
david@kazlg.com
Kazerouni Law Group, A.P.C.
301 East Bethany Home Road, Suite C-195
Phoenix, AZ 85012
Phone: (800) 400-6808
Facsimile: (800) 520-5523

CLASS-ACTION COMPLAINT